IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARK JOSEPH SHIPP, | ) | |
| Plaintiff, | ) ) | Civil Action No. 7:21cv00414 |
| v. | ) ) ) | **MEMORANDUM OPINION** |
| WARDEN PUNTURI, *et al.*, | ) ) ) | By:   Hon. Thomas T. Cullen
United States District Judge |
| Defendants. | ) | |

Plaintiff Mark Joseph Shipp, a Virginia inmate who filed this case *pro se* but who is now proceeding with counsel, filed this civil action under 42 U.S.C. § 1983, alleging that defendants subjected him to excessive force or were deliberately indifferent to the alleged excessive force. This matter is before the court on the defendants' oral motion for summary judgment as to all claims against Warden Punturi. Having reviewed the record, the court will grant the defendants' motion.

I.

Shipp alleges that on March 29, 2021, while at Pocahontas State Correctional Center ("Pocahontas"), defendant Lt. Bogle used excessive force against him and that defendants Warden Punturi, Cpt. Neal, Officer Craig, Officer Scott, and Unit Manager Hammond could have intervened to stop Bogle, but failed to act. (Am. Compl. 9 [ECF No. 15].)

The parties have stipulated to the fact that Warden Punturi was not present at Pocahontas on March 29, 2021. (ECF No. 75.)

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World*

*Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

Although the court does not make credibility determinations when adjudicating a motion for summary judgment, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

### III.

Shipp seeks to hold Warden Punturi liable for the use of force by Lt. Bogle on a theory of bystander liability. The Fourth Circuit "recognizes a cause of action for bystander liability 'premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them.'" *Stevenson v. City of Seat Pleasant, Maryland*, 743 F.3d 411, 416−17 (4th Cir. 2014) (quoting *Randall v. Prince George's Cnty., Maryland*, 302 F.3d 188, 203 (4th Cir. 2002)). "[A]n officer may be liable under § 1983, on a theory of bystander liability, if he: (1) knows that a fellow officer is violating an individual's constitutional rights; (2) has a reasonable opportunity to prevent the harm; and (3) chooses not to act." *Randall*, 302 F.3d at 204. Because there is no dispute that Warden Punturi was not present at Pocahontas on the day of the alleged assault and there is no allegation that Warden Punturi had any advance knowledge that the alleged use of force would occur, the court cannot find that Warden Punturi had a reasonable opportunity to prevent the alleged assault from happening. Finding no genuine dispute as to any material fact and that the defendants are entitled to judgment as

a matter of law, the court will grant their motion as to the bystander liability claim against Punturi.

**IV.**

Prior to the pretrial conference, the court had some doubt as to whether Shipp had raised a supervisory liability claim against Warden Punturi. Counsel represented at the pretrial conference, however, that no such claim was asserted, and that Shipp did not intend to present evidence to support such a claim at trial.[1] But if such a claim were asserted,[2] it would be subject to dismissal on the pleadings, *see* 28 U.S.C. § 1915(e)(2)(B)(ii), and the merits, *see* Fed. R. Civ. P. 56.

It is well established that a supervisory government official cannot be held liable under § 1983 for the actions of his subordinates solely on the basis of *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). Nonetheless, a supervisory official may be liable for his subordinate's acts if the supervisor himself bears personal responsibility for those acts. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Liability in this context is not premised on *respondeat superior*, but on a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

---

[1] The defendants' proposed jury instructions, however, do contemplate that a supervisory liability claim is pending. (*See* ECF No. 74 at 21.)

[2] In its prior opinion, the court identified a supervisory liability claim. (*See* Mem. Op. at 8 n.2, Oct. 20, 2023 [ECF No. 63].) But there is some doubt in the court's mind that any such claim was properly exhausted through the prison's administrative grievance procedure, as required by the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(1) ("No action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted."). Although not raised by the parties, and therefore not before the court on a complete record, the grievances Shipp submitted with his complaint do not support that a supervisory liability claim was ever included in a prison grievance.

> In order to prevail on a claim for supervisory liability, a plaintiff must show:
>
>> (1) that the supervisor had actual or constructive knowledge that [his] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). Establishing a "pervasive" and "unreasonable" risk of harm under the first element requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury. *Slakan*, 737 F.2d at 373–74. A plaintiff may establish deliberate indifference by demonstrating a supervisor's "continued inaction in the face of documented widespread abuses." *Id.* at 373. Overall, "[t]he plaintiff . . . assumes a heavy burden of proof in supervisory liability cases," for "[h]e must not only demonstrate that the prisoners face a pervasive and unreasonable risk of harm from some specified source, but he must show that the supervisor's corrective inaction amounts to deliberate indifference or 'tacit authorization of the offensive [practices].'" *Id.* at 372 (quoting *Orpiano v. Johnson*, 632 F.2d 1096, 1101 (4th Cir. 1980)) (alteration in original). "[H]e cannot satisfy [this] burden of proof by pointing to a single incident or isolated incidents." *Id.*

Shipp's allegations do not establish the *Shaw* elements against Warden Punturi and, thus, Shipp has not alleged a cognizable supervisory liability claim against him. Shipp asserts that Warden Punturi is "legally responsible for the overall operations of the institution . . . and

for the welfare of all the inmates in that prison." (Am. Compl. at 2.) This threadbare, conclusory allegation is insufficient to state a claim for supervisory liability.

Turning to the merits of such a claim, there is no dispute that Warden Punturi was not present on the day of the alleged incident. In addition, there is no allegation that Warden Punturi had any advance knowledge of the alleged use of force or that any action or inaction of the warden caused the alleged use of force. Moreover, after learning about the incident, Warden Punturi relied on an investigation of the event in responding to Shipp's grievance (*see* ECF No. 44-1 at 25) and later overturned Shipp's related disciplinary conviction after reviewing the circumstances (*see* Pl. Proposed Exh. 1). As such, the court cannot conclude that the warden's response was so inadequate as to show "deliberate indifference to or tacit authorization of" the alleged use of excessive force. Finding no genuine dispute as to any material fact and that the defendants are entitled to judgment as a matter of law, the court will grant their motion as to the supervisory liability claim against Punturi.

## V.

For the reasons stated, the court will grant the defendants' motion for summary judgment and terminate Warden Punturi as a defendant. This matter will proceed to trial against the remaining defendants on December 18–20, 2023, as currently scheduled.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 14th day of December, 2023.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE